## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORDIA

CASE NO.: 9:19-cv-80525-DMM/Becerra

KENAKIL GIBSON,

      Petitioner,

v.

MARK J. INCH, SECRETARY,
FLORIDA DEPARTMENT OF
CORRECTIONS,

      Respondent.

_____/

## REPORT AND RECOMMENDATIONS ON PETITION FOR
## WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2254[1]

THIS CAUSE is before the Court upon Petitioner Kenakil Gibson's ("Petitioner") *pro se*

Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Amended Petition")

with supporting Memorandum of Law ("Memorandum") challenging his convictions following a

jury verdict and resulting sentences for first degree murder with a firearm, conspiracy to commit

first degree murder, and solicitation to commit first degree murder entered in Palm Beach County

Circuit Court, Case No. 2008CF000919BMB.  ECF Nos. [11], [13].  Petitioner raises a total of

eight claims, four claims of trial court error and four claims of ineffective assistance of counsel.

*Id.*  The State filed its Response to Order to Show Cause and Motion to Stay ("State's Response")

and Appendices conceding that the Petition is timely, but arguing that most of the claims are

unexhausted, and that in any event, none are meritorious.  ECF No. [17].  In his Reply, Petitioner

---

[1] On December 10, 2020, this matter was referred to the undersigned for all pre-trial, non-dispositive matters, and for a Report and Recommendation on any dispositive matters pursuant to 28 U.S.C. § 636.  *See* ECF No. [26].

concedes that five of the claims are unexhausted, but attempts to overcome the procedural default by asserting cause and prejudice or that a fundamental miscarriage of justice will result if the claims are not reviewed on the merits. *See* ECF No [19]. As to the remaining claims, Petitioner asserts these claims were either exhausted because they were raised for the first time on appeal following the denial of his motion for post-conviction relief, or that his attorneys were negligent for failing to raise the denial of the claim on appeal. *See* ECF Nos. [11], [13], [19]. The undersigned has carefully reviewed the Amended Petition, ECF No. [11], Memorandum, ECF No. [13], the State's Response, ECF No. [17], the State's Appendices, ECF No. [18], Petitioner's Reply, ECF No. [19], and the governing law, and for the reasons stated below, the undersigned **RECOMMENDS** that the Petition be **DENIED**.

## I.      FACTUAL AND PROCEDURAL HISTORY

On November 25, 2007, law enforcement responded to the home of George Mannarino ("the victim"), who was standing outside when he was killed as a result of a single gunshot to his chest the day before he was scheduled to testify in a burglary case against Petitioner. *See* ECF No. [18-6] at T. 587–598. On March 4, 2010, an Indictment was returned charging Petitioner with first degree murder with a firearm, in violation of Fla. Stat. §§ 775.087(1), 775.087(2)(a)1, 775.087(2)(a)2, 775.087(2)(a)3, 782.04(1)(a)1, and 782.04(1)(a)2 (Count 1), conspiracy to commit first degree murder, in violation of Fla. Stat. §§ 777.04(3) and 782.04(1)(a)1 and 2 (Count 2), and solicitation to commit first degree murder, in violation of Fla. Stat. §§ 777.04(2) and 782.04(1)(a)1 and 2 (Count 3). ECF No. [17-2], Ex. 1 at 2–3.[2]

---

[2] Unless otherwise noted, the page numbers identifying Respondent's Appendix, docketed at ECF No. [17-2] and [17-3], are those imprinted by CM/ECF, the Court's electronic docketing system on the upper, right-hand corner of the filings. The letter "T" in this report followed by a page number refers to the trial and evidentiary hearing transcripts, docketed at ECF Nos. [18-1] to [18-13], and the actual page number of the transcripts. *See* ECF No. [18].

Before trial, Petitioner's motion to suppress identification was denied by the trial court following an evidentiary hearing. *See id.*, Ex. C at 180–82. After proceeding to trial, the jury returned a verdict finding Petitioner guilty as charged. *Id.*, Ex. 9 at 183–84. Petitioner was adjudicated guilty and sentenced to two concurrent terms of thirty years of imprisonment as to Counts 2 and 3, to be followed by a consecutive lifetime term of imprisonment, without the possibility of parole, as to Count 1. *Id.* at 187–88.

### A.    Petition's Direct Appeal

Petitioner appealed raising five claims of trial court error by: (1) improperly denying Petitioner's motion for judgment of acquittal as to each count; (2) allowing Ramon Feliciano to testify regarding co-defendant Rutledge's hearsay statements; (3) denying Petitioner's motion to suppress his in-court and out-of-court identifications; (4) admitting prior bad acts evidence; and (5) failing to conduct an adequate discovery violation hearing. *See id.*, Ex. 2 at 5–43. Petitioner also raised a claim that trial counsel was ineffective for introducing evidence that Petitioner was in possession of firearms unrelated to the charged offenses. *Id.* at 44–46. The Third District Court of Appeal *per curiam* affirmed the convictions and sentences in a decision without written opinion. *See Gibson v. State,* 139 So. 3d 312 (Fla. 4th DCA 2014) (unpublished disposition); ECF No. [17-2], Ex. 5 at 108. Rehearing was denied on May 14, 2014. *Id.*, Ex. 7 at 120.

### B.    Post-Conviction Proceedings

Petitioner filed his first counseled motion for post-conviction relief, pursuant to Fla. R. Crim. P. 3.850 ("Rule 3.850 Motion"), raising multiple claims, including claims that are now Claims 5, 6, and 8 of the instant Petition, as outlined below. *Id.*, Ex. 8 at 122–138. Following the State's response and a two-day evidentiary hearing, the trial court entered a detailed Order denying the Rule 3.850 Motion. *Id.*, Ex. 10 at 208–221. Rehearing was denied by Order entered on October

17, 2018.  *Id.*, Ex. 13 at 230.  Petitioner appealed.  *Id,* Ex. 14 at 232–276.  In his counseled initial

brief, Petitioner raised numerous claims, including a challenge to the trial court's rejection of what

is now Claims 5 and 6.  *Id.*, Ex. 14 at 232–76.  The Fourth District Court of Appeal *per curiam*

affirmed the trial court's order in a decision without written opinion.  *See Gibson v. State,* 264 So.

3d 157 (Fla. 4th DCA 2019) (unpublished disposition); ECF No. [17–3], Ex. 17 at 65.  Rehearing

*en banc* was denied on March 15, 2019.  ECF No. [17–3], Ex. 20 at 20.

On March 14, 2019, Petitioner filed a state habeas corpus petition with the Fourth District

Court of Appeal arguing that appellate counsel was ineffective for failing to challenge the court's

jury instructions.  *Id.*, Ex. 21 at 89–95.  On March 29, 2019, the Fourth District Court of Appeal

dismissed the petition as untimely pursuant to Fla. R. App. P. 9.141(d)(5).  *Id.*, Ex. 22 at 97.

On April 30, 2019, Petitioner next filed a second Rule 3.850 Motion, raising what is Claim

7 of the instant Petition, as listed below.  *Id.*, Ex. 23 at 99–109.  On June 18, 2019, the trial court

entered an Order denying the second Rule 3.850 Motion, adopting the state's response thereto.  *Id.*,

Ex. 25 at 121–22.  On October 31, 2019, the Fourth District Court of Appeal *per curiam* affirmed

the trial court's order in a decision without written opinion.  *Gibson v. State,* 285 So. 3d 949 (Fla.

4th DCA 2019) (unpublished disposition).

## II.    THE INSTANT PETITION

Before conclusion of the above state court proceedings, Petitioner filed his initial Petition

before this Court by handing it to prison officials for mailing as evidenced by the prison facility

stamp.[3]  ECF No. [1] at 36.  On May 6, 2019, Petitioner filed his Amended Petition and then filed

his supporting Memorandum on July 8, 2019.  ECF Nos. [11], [13].

---

[3] A *pro se* prisoner's filing is deemed filed on the date it is delivered to prison authorities for mailing.  *Washington v. United States,* 243 F.3d 1299, 1301 (11th Cir. 2001) (per curiam); Fed. R. App. 4(c)(1).

To begin, *pro se* pleadings are "liberally construed" and "held to a less stringent standard than a pleading drafted by an attorney." *Waldman v. Conway,* 871 F.3d 1283, 1289 (11th Cir. 2017) (per curiam); *see also Haines v. Kerner,* 404 U.S. 519, 520 (1972) (per curiam). That leniency, however, "does not give courts license to serve as de facto counsel or to rewrite an otherwise deficient pleading in order to sustain an action." *Shuler v. Ingram & Assocs.,* 441 F. App'x 712, 716 n.3 (11th Cir. 2011) (per curiam); *Golfin v. Sec'y for Dep't of Corr.,* 276 F. App'x 908, 908 (11th Cir. 2008) (per curiam) ("[W]e will not act as *de facto* counsel for a *pro se* litigant.").

Thus, when construed liberally, Petitioner raises the following eight claims:

CLAIM 1:    The trial court erred in denying Petitioner's motion for judgment of acquittal as to the first-degree murder with a firearm offense. ECF No. [11] at 5; ECF No. [13] at 9–13.

CLAIM 2:    The trial court erred in denying Petitioner's motion for judgment of acquittal as to the solicitation to commit first degree murder offense. [ECF No. [11] at 7; ECF No. [13] at 14–17.

CLAIM 3:    The trial court erred in denying Petitioner's judgment of acquittal as to the conspiracy to commit first degree murder offense. ECF No. [11] at 8; ECF No. [13] at 17-20.

CLAIM 4:    Petitioner's Confrontation rights were violated when the trial court allowed Ramon Feliciano to testify as to hearsay statements. ECF No. [11] at 10; ECF No. [13] at 20–22.

CLAIM 5:    Counsel was ineffective for introducing irrelevant collateral crimes evidence. ECF No. [11] at 16; ECF No. [13] at 22–24.

CLAIM 6:    Counsel was ineffective for failing to depose and then call co-defendant Eddie Rutledge to testify as a defense witness given his affidavit exonerating Petitioner. ECF No. [11] at 16.

CLAIM 7:    Collateral counsel was ineffective for failing to raise during the Rule 3.850 proceedings and appeal therefrom a claim that trial counsel was ineffective for failing to object to the court's principal jury instructions. ECF No. [11] at 17; ECF No. [13] at 25–28.

CLAIM 8:     Counsel was ineffective for misadvising and then depriving Petitioner of his right to testify on his own behalf at trial.  ECF No. [11] at 18.

## III.    STANDARD OF REVIEW

Since this case was filed long-after April 24, 1996, the court's review of a state prisoner's federal habeas corpus petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA").  *See Abdul–Kabir v. Quarterman,* 550 U.S. 233, 246 (2007); *Ledford v. Warden, Ga. Diagnostic & Classification Prison,* 818 F.3d 600, 642 (11th Cir. 2016).  The AEDPA ensures that federal habeas corpus relief works to "guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction."  *See Greene v. Fisher,* 565 U.S. 34, 38 (2011) (quotation marks and citation omitted); *Ledford,* 818 F.3d at 642.  The "AEDPA's statutory scheme is designed to strongly discourage" petitioners from presenting new evidence and ensures that "[f]ederal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings."  *Cullen v. Pinholster,* 563 U.S. 170, 186 (2011) (citations omitted).  The AEDPA standard is both mandatory and "difficult to meet."  *White v. Woodall,* 572 U.S. 415, 419 (2014) (citation omitted).  It imposes a "highly deferential standard for evaluating state-court rulings [and] demands that [state court decisions] be given the benefit of the doubt."  *Renico v. Lett,* 559 U.S. 766, 773 (2010) (quotation marks and citation omitted); *Lee v. Comm'r, Ala., Dep't of Corr.*, 726 F.3d 1172, 1192 (11th Cir. 2013) (citations omitted).  The Eleventh Circuit "has stressed that in applying AEDPA deference federal courts are not to take a magnifying glass to the state court opinion or grade the quality of it."  *See Meders v. Warden, Ga. Diagnostic Prison,* 911 F.3d 1335, 1350 (11th Cir. 2019).  Thus, deferential review under § 2254(d) is generally limited to the record that was before the state court that adjudicated the claim on the merits. *See Cullen,* 563 U.S. at 181–82; *see also Gill v. Mecusker*,

633 F.3d 1272, 1287 (11th Cir. 2011).

Under the AEDPA, a federal court may not grant a habeas petition relief on any claim adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d); *Harrington v. Richter,* 562 U.S. 86, 97-98 (2011); *Rimmer v. Sec'y, Fla. Dep't of Corr.,* 876 F.3d 1039, 1053 (11th Cir. 2017). Further, for purposes of federal habeas review, "clearly established federal law" consists of the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state court decision. *Williams v. Taylor,* 529 U.S. 362, 412 (2000); *Lee,* 726 F.3d at 1192 (citation omitted). "A Supreme Court decision, which is not dictated by precedent or is not made retroactive to cases on collateral review, handed down after the petitioner's conviction becomes final does not control the disposition of the petitioner's habeas proceeding." *Gary v. Hall,* 558 F.3d 1229, 1254 (11th Cir. 2009) (citing *Newland v. Hall,* 527 F.3d 1162, 1196–1201 (11th Cir. 2008)). Thus, district courts must first identify the last state court decision, if any, that adjudicated the merits of the claim. *See Marshall v. Sec'y, Fla. Dep't of Corr.,* 828 F.3d 1277, 1285 (11th Cir. 2016). The state court is not required to issue an opinion explaining its rationale, because even the summary rejection of a claim, without explanation, qualifies as an adjudication on the merits which warrants deference. *See Harrington,* 562 U.S. at 100; *Meders,* 911 F.3d at 1351 (citation omitted).

Petitioner bears "the burden of establishing his right to federal habeas relief and of proving all facts necessary to show a constitutional violation." *See Fillmore v. Perry,* 163 F. App'x 819, 820 (11th Cir. 2006) (per curiam) (citing *Romine v. Head,* 253 F.3d 1349, 1357 (11th Cir. 2001)).

Thus, to warrant relief, Petitioner must show that the state court ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Lee*, 726 F.3d at 1192 (quoting *Harrington,* 560 U.S. at 103). An unreasonable application of federal law differs from an incorrect application of federal law. *Renico*, 559 U.S. at 773 (citation omitted). Courts "apply this same standard when evaluating the reasonableness of a state court's decision under § 2254(d)(2)." *Landers v. Warden*, *Att'y Gen., State of Ala.,* 776 F.3d 1288, 1294 (11th Cir. 2015) (citations omitted). That is, "[a] state court's determination of the facts is unreasonable only if no fair-minded jurist could agree with the state court's determination . . . ." *Holsey v. Warden, Ga. Diagnostic Prison*, 694 F.3d 1230, 1257 (11th Cir. 2012) (citations and internal quotation marks omitted).

Notably, where "no state court has adjudicated the merits of a claim that was properly presented, 'federal habeas review is not subject to the deferential standard that applies under AEDPA. . . . Instead, the claim is reviewed *de novo*.'" *Reaves v. Sec'y, Fla. Dep't of Corr.,* 872 F.3d 1137, 1151 (11th Cir. 2017) (alteration in original) (quoting *Cone v. Bell,* 556 U.S. 449, 472 (2009)). Even where a state court decision "addresses some but not all of a defendant's claims," that decision is an adjudication "on the merits" for purposes of the AEDPA. *See Johnson v. Williams,* 568 U.S. 289, 298–99 (2013) (observing some claims may be too insubstantial to merit discussion). The United States Supreme Court has cautioned that "federal courts have no authority to impose mandatory opinion-writing standards on state courts," and due to the heavy caseload shouldered by many appellate courts, "opinions issued by these courts must be read with that factor in mind." *Lee,* 726 F.3d at 1212 (quoting *Johnson,* 568 U.S. at 299–300). In any event, federal courts are authorized to deny a federal relief when the claim is subject to rejection under *de novo* review, regardless of whether the AEDPA deference applies. *See Berghuis v. Thompkins*, 560

U.S. 370, 390 (2010) (holding federal courts can deny writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, because a habeas petition will not be entitled to habeas relief if his claim is rejected on *de novo* review); *Conner v. GDCP Warden,* 784 F.3d 752, 767 (11th Cir. 2015) ("[B]ecause we conclude that Mr. Conner would not be entitled to habeas relief under *de novo* review, we affirm the District Court's denial of relief under that standard without resolving whether AEDPA deference applies.").

### A.    The Petition Is Timely.

Respondent concedes that the Amended Petition was timely filed.  ECF No. [17] at 6. Because Respondent has explicitly waived the statute of limitations defense, this Court need not determine whether the waiver is accurate.  *See* 28 U.S.C. §2244(d)(1)-(2); *Wood v. Milyard,* 566 U.S. 463, 473 (2012)[4] (citing *Day v. McDonough,* 547 U.S. 198, 210-11 (2006)).  As such, the Petition is timely.

### B.    The Claims Have Not Been Exhausted.

Pursuant to 28 U.S.C. § 2254(b)–(c), petitioners must exhaust their claims before presenting them in a federal habeas corpus petition.  *See* 28 U.S.C. § 2254(b)(1); *Anderson v. Harless,* 459 U.S. 4, 6 (1982); *Preston v. Sec'y, Fla. Dep't of Corr.,* 785 F.3d 449, 457 (11th Cir. 2015) (quoting *Lucas v. Sec'y, Dep't of Corr.,* 682 F.3d 1342, 1351 (11th Cir. 2012)).  When petitioners do not properly present their claims to a state court by exhausting those claims and complying with the applicable state procedure, § 2254 may bar federal review of those claims in federal court. *Mason v. Allen,* 605 F.3d 1114, 1119–20 (11th Cir. 2010) (per curiam) (relying upon

---

[4] In *Wood,* the United States Supreme Court held that a federal court abuses its discretion by considering a statute of limitation defense that has been affirmatively waived, as opposed to merely forfeited.  *Wood,* 566 U.S. at 473.  *See also Green v. United States,* 735 F. App'x 687, 688 (11th Cir. 2018) (per curiam) (citing *In Re Jackson,* 826 F.3d 1343, 1348 (11th Cir. 2016)).

28 U.S.C. § 2254(b)-(c)).

"[T]o properly exhaust a claim, the petitioner must fairly present[] every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review." *Mason,* 605 F.3d at 1119 (internal quotation marks and citation omitted).  A federal claim must be fairly presented in each appropriate state court in order to alert the state courts to the federal nature of a claim. *Baldwin v. Reese,* 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted). To make a fair presentation to the state courts, the relevant filings must either explicitly refer to a federal claim or cite to a federal source that would have alerted the reviewing state court of the federal nature of the claim. *Id.* at 33.  Prisoners can also fairly present their claim by labeling their claims as "federal." *Lucas,* 682 F.3d at 1351.  However, habeas applicants must "do more than scatter some makeshift needles in the haystack of the state court record" to properly exhaust their claim. *McNair v. Campbell,* 416 F.3d 1291, 1301 (11th Cir. 2005) (quoting *Kelley v. Sec'y, Fla. Dep't of Corr.,* 377 F.3d 1317, 1345 (11th Cir. 2004) (internal quotation marks omitted)).

### 1.    Claims 1, 2, 3, 4, 7, and 8 Are Not Exhausted.

Respondent argues that Claims 1, 2, 3, and 4 were not exhausted because Petitioner did not raise them on direct appeal in terms of a violation of federal constitutional terms.  ECF No. [17] at 7–8.  Petitioner concedes Claims 1, 2, and 3 were not fairly presented as a federal claim as they did not cite to a federal source, nor did he label them as "federal" when raised as ground one on direct appeal.  *See* ECF No. [19] at 1–6.  As such, as to Claims 1, 2 and 3, there is no dispute that the claims are not exhausted.

Petitioner, however, maintains that Claim 4, raised as ground two on direct appeal, was exhausted because it cited to *Brooks v. State,* 787 So. 2d 765 (Fla. 2001), a state court decision which relied upon federal constitutional principles.  *Id.* at 7.  Petitioner's argument is unavailing

as the citation alone is insufficient to alert the state court of the federal basis of the claim even where the state law and federal law are identical. *See* 28 U.S.C. § 2254(b)(1); *Preston,* 785 F.3d at 460. Indeed, Petitioner needed to label the claim as "federal" or rely on a federal source to apprise the state forum of the federal nature of the claim. He did not do so. ECF No. [17-2], Ex. 2 at 34–38. Accordingly, because the federal issue was not expressly presented to the State court on direct appeal, it is unexhausted. *See Baldwin,* 541 U.S. at 33–34; *Preston,* 785 F.3d at 457.

Finally, Petitioner concedes that Claims 7 and 8 are unexhausted. *See* ECF Nos. [11] at 17– 18; [19] at 8–10. Petitioner explains the substantive issues underlying the claims were not raised on direct appeal by appellate counsel. *See* ECF No. [11] at 17–18. He further contends that collateral counsel failed to raise the issue following the denial of the claims by the state court in the Rule 3.850 proceeding. *See Id.* at 18–19.

### a. The Petitioner Has Failed To Show Cause For The Failure To Properly Present The Unexhausted Claims Or Actual Prejudice From The Default.

Although Claims 1, 2, 3, 4, 7, and 8 are not exhausted, a procedural default can be overcome or excused by showing cause for the failure to properly present the claim and actual prejudice from the default. *See Jones v. Campbell,* 436 F.3d 1285, 1304 (11th Cir. 2006). "To establish 'prejudice,' a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different." *Henderson v. Campbell,* 353 F.3d 880, 892 (11th Cir. 2003) (citing *Wright v. Hopper,* 169 F. 3d 695, 703 (11th Cir. 1999)). Petitioner has not shown cause for the failure to properly present the claim nor actual prejudice from the default to circumvent the procedural default of Claims 1, 2, 3, and 4.

### b. Claimant Cannot Show That Failure To Consider The Merits Would Result In A Fundamental Miscarriage Of Justice.

If Petitioner is unable to show cause for the failure to properly present the claim and actual

prejudice from the default, he may still be able to circumvent the procedural default of his claims if he can demonstrate that the failure to consider the merits of the claims would endorse a fundamental miscarriage of justice, resulting in the continued incarceration of one who is actually innocent. *See McQuiggin v. Perkins,* 569 U.S. 383, 387 (2013); *Ward v. Hall,* 592 F.3d 1144, 1157 (11th Cir. 2010). This exception "serves as a gateway through which a [§ 2254] petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations." *McQuiggin,* 569 U.S. at 386.

To qualify under this exception, Petitioner must show that, in light of new evidence, no reasonable juror would have voted to find Petitioner guilty beyond a reasonable doubt. *See McQuiggin,* 569 U.S. at 385 (quoting *Schlup,* 513 U.S. at 327). "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation" will not allow a federal court to review the procedurally defaulted claim through the fundamental miscarriage of justice exception. *Schlup,* 513 U.S. at 316. Further, the exception requires Petitioner to demonstrate actual innocence, not just legal innocence. *See Rozzelle v. Sec'y, Fla. Dep't of Corr.,* 672 F.3d 1000, 1013 (11th Cir. 2012) (per curiam). Petitioner here does not rely upon any evidence of innocence. Thus, this equitable exception does not apply. Therefore, without application of this exception, the claims remain procedurally defaulted from federal habeas corpus review.

In summary, Claims 1, 2, 3, and 4 are procedurally defaulted from review. Petitioner has not shown cause for the failure to properly present the claim, has not shown prejudice, nor has he shown that a fundamental miscarriage of justice will result if the Court does not review the merits of these claims. Therefore, these claims remain procedurally defaulted.

## 2.      The Ineffective Assistance of Counsel Claims Have No Merit.

In Claims 5, 6, 7 and 8, Petitioner challenges counsel's effectiveness.  As an initial matter, Claims 7 and 8 are not exhausted.   Nonetheless, those claims as well as Claims 5 and 6 are governed by the Supreme Court's two-pronged test announced in *Strickland v. Washington*, 466 U.S. 668 (1984).   The two-prong test requires Petitioner to demonstrate : (1) that counsel's performance was deficient, and (2) there is  reasonable probability that the deficiency resulted in prejudice.  *See Strickland,* 466 U.S. 668 at 687.  Deficient performance requires Petitioner to demonstrate counsel's actions were unreasonable or fell below prevailing professional competence demanded of defense attorneys.  *Strickland,* 466 U.S. at 688.  The *Strickland* deficiency prong does not require a showing of what the best or good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted.  *Dingle v. Sec'y, Dep't of Corr.,* 480 F.3d 1092, 1099 (11th Cir. 2007).  Even with the benefit of hindsight, where counsel's decision appears unwise, it will only be ineffective if it was so unreasonable no attorney would have chosen it.  *Id.* at 1099.  *Strickland*'s prejudice prong requires Petitioner to establish that, but for counsel's deficiency, there is a reasonable probability that the result of the proceeding would have been different.  *Strickland,* 466 U.S. at 694.  If Petitioner cannot meet one of *Strickland*'s prongs, the Court need not address the other prong.  *Id.* at 697; *Brown v. United States,* 720 F.3d 1316, 1326 (11th Cir. 2013).  Also, bare and conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test.  *See Blackledge v. Allison,* 431 U.S. 63, 74 (1977); *Boyd v. Comm'r, Ala. Dep't of Corr.,* 697 F.3d 1320, 1333-34 (11th Cir. 2012).

### a.      Counsel Was Not Ineffective For Introducing Collateral Crimes Evidence (Claim 5).

In Claim 5, Petitioner asserts his counsel was ineffective for introducing irrelevant collateral crimes evidence at trial.  ECF No. [11] at 16; ECF No. [13] at 22–24.  Petitioner

maintains that trial counsel elicited testimony from Lt. Brian Kapper that Petitioner was in possession of other firearms—an AK-47 and a .357 firearm—found inside Petitioner's apartment during a search by law enforcement on charges unrelated to the homicide. *Id.* Petitioner claims the probative value of this evidence was substantially outweighed by its unfair prejudice. ECF No. [13] at 23. Because counsel elicited this testimony, Petitioner states the State was able to introduce photographs of the firearms seized from Petitioner's home on unrelated charges and then emphasize during closing that the AK-47 is an assault rifle designed for military, and not personal use. *Id.* at 24. He maintains counsel had no justifiable strategy for its introduction since the State was barred from doing so under "all theories" of Florida law. *Id.* at 23. Petitioner claims he never agreed with counsel's strategy to preemptively introduce this information, especially as counsel admitted that she could have established that the murder weapon was not seized from Petitioner's home without introducing the other gun evidence. *Id.* at 23–24.

In its Response, the State argues that an August 19, 2006 photograph obtained from Petitioner's computer shows a young man inside Petitioner's apartment holding the identical weapon used to murder Mannarino. ECF No. [17] at 17. Respondent argues that defense counsel made the "strategic decision to 'embrace the bad facts' and 'show the jury everything' in order to minimize the impact of the photo showing the murder weapon inside the victim's residence." *Id.*

At the Rule 3.850 evidentiary hearing, defense counsel, Shari Vrod, Esquire ("Defense Counsel Vrod"),[5] testified that her trial strategy in the case from *voir dire* going forward was to emphasize that many people in Florida own guns and concede that Petitioner legally owned firearms and had never been convicted of a crime. ECF No. [18-13] at T. 24. In fact, Defense

---

[5] At the time, she was working with the Office of Regional Conflict Counsel ("ORCC") because the State was seeking the death penalty prior to trial. *Id.* at T. 60–61. As a result, two defense attorneys are always assigned to death penalty cases. *Id.*

Counsel Vrod recalled that some of the jurors were also gun owners. *Id.* at T. 24–25. Defense Counsel Vrod explained she wanted to "embrace" the "bad facts" in order to minimize its impact on the jury. *Id.* at T. 26. Through cross-examination of Lt. Kapper, Defense Counsel Vrod hoped to emphasize that the AK-47 and Python firearms that were recovered from Petitioner's home were not the one used in the Mannarino murder. *Id.* at T. 26–27. Defense Counsel Vrod hoped to make a clear distinction between the murder weapon and the other weapons that Petitioner lawfully owned. *Id.* at T. 29. She further wanted to emphasize that he was not getting rid of any murder weapons, and had, in fact, contacted law enforcement for assistance on several occasions after the Mannarino murder. *Id.* Moreover, Defense Counsel Vrod testified that during *voir dire* she selected jurors who owned or were "fine" with individuals owning firearms. *Id.* at T. 32.

Defense Counsel Vrod testified during cross-examination that Anthony Pullano was a computer expert whom she retained to review the work done by McGovern, the State's expert. *Id.* at T. 61. Alberto Delapaz, the ORCC's in-house investigator also worked on Petitioner's case. *Id.* Because it was a death penalty case, Defense Counsel Vrod thinks, but could not recall if she had spoken with mitigation and psychological experts regarding the case. *Id.*

As she was preparing for trial, Defense Counsel Vrod recalled getting more discovery from the State regarding the firearm and Tyre, and the State's comparison of the murder weapon with the photograph showing Tyre holding the same rifle. *Id.* at T. 62. During pre-trial preparations, Defense Counsel Vrod recalled receiving evidence she deemed "harmful" from the State's photograph expert linking the firearm in the photograph seized from Petitioner's computer to the murder weapon. *Id.* at T. 63–64. Defense Counsel Vrod further recalled emphasizing during closing argument that it was not illegal for Petitioner to possess firearms, and that Petitioner was not arrested at any time the police visited his home, thereby inferring Petitioner had no prior

convictions. *Id.* at T. 67–68.  Further, Defense Counsel Vrod confirmed that the jury could infer

from her closing that officers were given consent to search Petitioner's apartment after the shooting

and they never found the murder weapon in his apartment. *Id.*

Indeed, when the identical claim was raised (as claim 2) in Petitioner's Rule 3.850 Motion,

it was denied by the trial court, after an evidentiary hearing, finding Petitioner had not established

*Strickland* deficiency.  Specifically, the court found that:

> . . . the defense intentionally and deliberately introduced evidence showing that
> months before the homicide occurred the defendant had called law enforcement to
> his home to report a crime, and the ensuing search of his home revealed
> conclusively that the firearm used in the homicide was not among the firearms in
> his possession.  Ms. Vrod formulated her decision before trial, and ensured through
> voir dire the existence of sitting jurors who were gun owners, and who understood
> that citizens are allowed under the law to keep guns.  In other words, in conjunction
> with her intent to use this strategy at trial, Ms. Vrod ensured from the outset the
> defendant's jury would not consider the evidence of unconnected firearms as an
> indicator of the defendant's guilt or bad character.  Nor did the State make any such
> argument during its arguments to the jury.
>
> More specifically, as testified by Ms. Vrod and as seen in the transcript of
> her closing arguments to the jury at trial, the defense used this evidence in an
> attempt to undermine the State's claim that the defendant had given the gun to co-
> defendant Rutledge for the purpose of killing Mr. Mannarino.  Indisputably, the
> State had proven that the murder weapon was present in the defendant's apartment
> in August 2006 through a photograph taken from the defendant's computer.
> However, by bringing before the jury what was found in the defendant's apartment
> (unrelated firearms) and, more importantly, what was not found (the murder
> weapon) in November 2006 and March 2007--more than six months before the
> murder--the defense was able to argue the existence of reasonable doubt whether
> the defendant still possessed that particular firearm and whether he in fact provided
> it to Rutledge for the murder.  Otherwise, the State's argument that defendant was
> a principal in the murder by providing the firearm to Rutledge would have gone
> unchallenged.  The transcript of Ms. Vrod's closing arguments is consistent with
> her testimony in this regard.
>
> In addition to her intention to use the unconnected firearm evidence to
> challenge the State's theory of the case, defense counsel testified she had concerns
> at the time of trial as to whether the State would attempt to allow the jury to hear
> evidence of the unconnected guns, and considered it preferable to be transparent
> with the jury even where the facts were not "pretty."  Advising the jury of the

legality of defendant's gun ownership further inferred the defendant's lack of prior felony convictions - a fact otherwise inadmissible as improper character evidence.

It is clear that the defendant carries the burden to "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052 (1984). The Court is to employ a strong presumption that counsel's performance was not ineffective. *Id.* "[S]trategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." *Occhicone v. State,* 768 So.2d 1037, 1048 (Fla. 2000). Moreover, "that there may have been more that trial counsel could have done or that new counsel in .reviewing the record with hindsight would handle the case differently, does not mean that trial counsel's performance during the guilt phase was deficient." *State v. Coney. 845 So.2d 120,* 136 (Fla.2003). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052.

Here, the Court finds defense counsel's introduction of evidence showing defendant as a gun owner did not constitute deficient performance under *Strickland.* Ms. Vrod testified she deliberately employed the evidence of the firearms as a strategy to undermine the State's claim that the defendant had given the gun to co-defendant Rutledge for the purpose of killing Mr. Mannarino. Under the circumstances of the case, including the strength of the State's evidence, and applying the legal standards established in *Strickland,* counsel's strategy was reasonable under the norms of professional conduct. Ground One fails to satisfy the first prong of the *Strickland* standard.

ECF No. [17-2], Ex. 10 at 211–13. That denial was subsequently *per curiam* affirmed on appeal in a decision without written opinion. *Gibson v. State,* 264 So. 3d 145 (Fla. 4th DCA 2019) (unpublished disposition); ECF No. [17–3], Ex. 17 at 66.

Petitioner is not entitled to relief here because the State court's rejection of the claim was neither "contrary to" nor an "unreasonable application of" *Strickland,* especially as Petitioner has not proven the result of the trial would have been different had the jury not heard evidence about the firearms he legally possessed under Florida and federal law. Given this record, counsel's trial strategy in attempting to minimize during cross-examination the effect of the photographic

testimony and Petitioner's firearm ownership was reasonable.  *See e.g., Brown v. State,* 846 So. 2d 1114, 1124 (Fla. 2003) (affirming trial court's finding that counsel was not ineffective for introducing testimony during the cross-examination when trial counsel had a specific purpose for eliciting the testimony).  Thus, the trial court's rejection of the claim finding it was a strategic decision was not error.  *See Dingle,* 480 F.3d at 1099 (a tactical decision amounts to ineffective assistance "only if it was 'so patently unreasonable that no competent attorney would have chosen it.'") (quoting *Adams v. Wainwright,* 709 F.2d 1443, 1445 (11th Cir. 1983)).  Thus, relief is not warranted here.

### b. Counsel Was Not Ineffective For Failing To Depose Or Call Co-Defendant Rutledge As A Defense Witness (Claim 6).

In Claim 6, Petitioner asserts that counsel was ineffective for failing to depose and call his co-defendant, Eddie Rutledge, to testify as a defense witness given his exculpatory affidavit exonerating Petitioner.  ECF No. [11] at 16.  Respondent argues Petitioner is not entitled to relief because counsel's strategic decision should not be second-guessed.  ECF No. [17] at 19–20.

When the identical claim was raised in the Amended Rule 3.850 proceeding, the trial court denied relief following an evidentiary hearing.  ECF No. [17-2], Ex. 10 at 213–14.  In its Order, the court found Petitioner had "failed to satisfy his burden of proof under *Strickland* as he has shown neither deficient performance nor prejudice…."  *Id.*  Specifically, the Court found:

> First, Ms. Vrod testified she in fact attempted to investigate the value of Rutledge's affidavit pretrial by contacting Rutledge's then attorney, Assistant Public Defender, Paul Petillo. Mr. Petillo instructed Ms. Vrod *not* to speak with Rutledge due to his pending appeal in the present case and apparently in a newer case.  Thus, Ms. Vrod was ethically prohibited from contacting Rutledge after specifically being told not to do so by his attorney, and Rutledge was unavailable to her for that reason alone.  Rule 4-4.2, Rules of Professional Conduct, *see Nelson v. State,* 73 So. 3d 77, 88 (Fla. 2011) (stating that unavailability of witness will preclude a defendant from establishing deficient performance or prejudice).  Ms. Vrod further testified she would not have been inclined to call Rutledge as a witness at trial without the ability to speak with him beforehand, without the opportunity to

properly assess his value as a witness or any risks inherent in calling her client's co-defendant to the stand.

Second, the defendant advised counsel in a videoconference on February 24, 2011 that he did not want to have Rutledge testify on his behalf.  Where the decision not to call a witness is the defendant's own, counsel will not be found ineffective for failing to call the witness.  *Thomas v. State,* 838 So. 2d 535 (Fla. 2003).

Third, the Court rejects as unbelievable Rutledge's testimony that he would have refused his attorney's advice not to testify for defendant while his own case was still open.  The defendant did not testify in his own trial, which was then on appeal.  Moreover, it is abundantly clear that the trial court would not have permitted trial counsel to call a witness to the stand who intended to claim the Fifth Amendment privilege as to essentially all questions, or who intended to invoke the privilege to shield material matters from full and fair cross examination.  *Sule v. State,* 968 So. 2d 99 (Fla. 4th DCA 2007); *Faver v. State,* 393 So. 2d 49 (Fla. 4th DCA 1981).  The Court finds that Rutledge, had he been called as a defense witness during defendant's trial, would have invoked the privilege to shield himself from full and fair cross examination on material matters.  The Court makes this decision based in large part on Rutledge's testimony at the evidentiary hearing, where he diligently invoked the privilege during such substantive question posed by the State on cross examination.  Because Rutledge's "testimony" would have been little more than a recitation of his affidavit followed by a refusal to submit to the State's cross examination on the basis of the Fifth Amendment, he was unavailable and counsel's failure to call him as a witness was not ineffective.  *See Kilpatrick v. State,* 144 So. 3d 666 (Fla. 1st DCA 2014).  The defendant has failed to show deficient performance by trial counsel, or a resulting prejudice, under Ground Two.

*Id.* at 213–15.  The appellate court *per curiam* affirmed the denial of the claim in a decision without written opinion.  *Gibson v. State,* 264 So. 3d 157 (Fla. 4th DCA 2019) (unpublished disposition); ECF No. [17-3], Ex.17 at 66.

Independent review of the record reveals that the Rule 3.850 rejection of the claim is amply supported by the record and is neither contrary to nor an unreasonable application of federal constitutional principles.  During the Rule 3.850 hearing, Defense Counsel Vrod testified she received a copy of Rutledge's affidavit appearing to exonerate Petitioner.  ECF No. [18-13] at T. 34–37.  After reviewing notes from the case summary file located in the Regional Counsel Office computer where she worked at the time she represented Petitioner, Defense Counsel Vrod testified

that Paul Petillo with the Public Defender's Office was representing co-defendant Rutledge.  *Id.* at T. 37.  Defense Counsel Vrod recalled e-mailing Rutledge's counsel to inquire if they could speak with Rutledge at his facility of confinement regarding the contents of his exculpatory affidavit, but Rutledge's counsel responded, "No, I don't think we are okay with that." *Id.*at T. 37.  Rutledge's counsel further indicated that because Rutledge's appeal was still pending, and also had a "new case" pending, he would be advising Rutledge to "remain silent" while his appeal was pending. *Id.*  Following receipt of that e-mail response from Rutledge's counsel, Defense Counsel Vrod testified that she did nothing further to speak with or subpoena Rutledge to testify as a defense witness at Petitioner's trial.  *Id.* at T. 37–39.

Defense Counsel Vrod testified she would never put anyone on the stand to testify with whom she had not first spoken to about the substance of their testimony.  *Id.* at T. 40.  Because she was told by defense counsel that Rutledge would not speak with her, and if subpoenaed for deposition, Rutledge would be invoking Fifth Amendment rights, she listed him as a witness initially, but would never have called him to testify as a defense witness.  *Id.*  She also did not pursue the issue further because Petitioner advised her he no longer wanted Rutledge called to testify on his behalf at trial.  *Id.* at T. 78.  Defense Counsel Vrod later testified she could not recall whether Petitioner instructed her not to call Rutledge to testify as a defense witness.  *Id.* at T. 42.  She also had no idea if Rutledge had been subpoenaed whether he would have followed his attorney's advice regarding remaining silent.  *Id.* at T. 42–43.

Rutledge testified at the evidentiary hearing, confirming he wrote the January 2, 2011 exculpatory affidavit he sent to Judge Rapp.  *Id.* at T. 116.  Rutledge testified that if called to trial or to give a deposition, he would have testified "verbatim" to what was contained in the affidavit. *Id.*  Rutledge affirmed he would have testified that Petitioner never conspired in his presence to

harm or kill Mannarino, nor did he witness Petitioner solicit anyone to harm or kill Mannarino. *Id.* Rutledge would have also testified he never saw or witnessed Petitioner speaking with or entertaining Feliciano on any occasion. *Id.* Rutledge affirmed he was aware that he was pending trial on another matter and was aware that his testimony could be used against him during those proceedings. *Id.* at T. at 118.

Rutledge affirmed that, against the advice of his attorney, if called by Defense Counsel Vrod to testify at Petitioner's trial, he would have done so and not remained silent. *Id.* at T. 119. However, when asked from whom or where he had gotten the rifle that was used in the Mannarino murder, which he had taken to Gator Guns, Rutledge invoked his right to remain silent. *Id.* at T. 120–21. When asked how long he had been in possession of the Mannarino murder weapon, Rutledge again invoked his right to remain silent. *Id.* at T. 121. Regarding whether he would be invoking his Fifth Amendment rights if asked questions regarding his interactions with Feliciano, Rutledge stated that on advice of counsel he would. *Id.* at T. 122. When asked how many times he had been in the neighborhood where Mannarino lived, Rutledge again invoked his Fifth Amendment rights. *Id.* T. at 122–23.

Petitioner testified at the hearing, denying ever discussing with counsel calling Rutledge to testify on his behalf at trial. *Id.* T. at 136–37. Petitioner explained that if someone like Rutledge wanted to provide exculpatory testimony, then of course he would want him to testify as a defense witness at trial. *Id.*

As applied, Petitioner has not demonstrated that had this witness been secured, he would have been permitted to testify as he did at the Rule 3.850 proceeding, much less that such testimony would have been favorable, resulting in an acquittal of Petitioner's charges. Further, Petitioner cannot maintain an ineffective assistance of counsel claim "simply by pointing to additional

21

evidence that could have been presented." *Van Poyck v. Fla. Dep't of Corr.,* 290 F.3d 1318, 1324 (11th Cir. 2002).  Moreover, in the habeas corpus context, a claim of uncalled witnesses is the "epitome of a strategic decision" that will seldom, if ever, serve as grounds to find counsel constitutionally ineffective. *Conklin v. Schofield,* 366 F.3d 1191, 1204 (11th Cir. 2004).  To show that counsel's conduct was unreasonable, defendant must demonstrate that "no competent counsel would have taken the action that his counsel did take." *Chandler v. United States,* 218 F.3d 1305, 1315 (11th Cir. 2000).  Given the evidence adduced at the Rule 3.850 proceeding, it cannot be said that counsel's decision was unreasonable. *See Miranda v. United States,* 433 F. App'x 866, 869 (11th Cir. 2011) (per curiam).  Finally, because Petitioner failed to show here or in the state forum that Rutledge would have been available to testify as proffered, at the time of Petitioner's trial, he cannot satisfy *Strickland's* prejudice prong. *See Reed v. Sec'y, Fla. Dep't of Corr.,* 767 F.3d 1252, 1262 (11th Cir. 2014); *Nelson v. State,* 875 So. 2d 579, 583 (2004).

> **c.    Counsel Was Not Ineffective For Failing To Object To The Court's Principal Jury Instructions (Claim 7).**

In Claim 7, Petitioner asserts that his post-conviction counsel was ineffective for failing to raise at the Rule 3.850 proceedings and appeal therefrom a claim that trial counsel was ineffective for failing to object to the court's principal jury instructions.  ECF No. [11] at 17; ECF No. [13] at 25–28.  According to Petitioner, the court failed to instruct the jury as to which charges related to the principal instructions, thereby permitting the jury to conclude that Petitioner was a member of the conspiracy to commit murder if he did anything to aid or abet the murder.  ECF No. [11] at 17.

Respondent argues that the claim is procedurally defaulted as it was never properly exhausted in the state forum.  ECF No. [17] at 21–23.  Petitioner responds, however, he attempted to properly exhaust the claim by raising it in a successive Rule 3.850 Motion, but relief was denied

based on the state's response which argued that the claim was procedurally defaulted as it could have been but was not raised during the first Rule 3.850 Motion.  ECF No. [13] at 26–27.

It is correct that the claim was not raised in Petitioner's first Rule 3.850 Motion.  *See* ECF No. [17–2], Ex. 8 at 121–41.  It is also correct that Petitioner raised the claim in a second Rule 3.850 Motion, but relief was denied on the basis that it could have been, but was not, raised in his first Rule 3.850 Motion.  *See* ECF No. [17-3], Exs. 23–25 at 98–122.  Petitioner also challenged direct appeal counsel's ineffectiveness for failing to pursue the issue by filing a state habeas corpus petition with the appellate court, but relief was summarily denied on the finding that the petition was not timely filed.  ECF No. [17-3], Exs. 21–22 at 89–97.

Respondent's argument is meritorious.  First, the claim is procedurally barred because Petitioner could have, but failed to raise the issue in his initial Rule 3.850 Motion.  In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court held that "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Id.* at 17.  Petitioner attempts to extend *Martinez* in order to permit this court to hear a substantial, but procedurally defaulted, claim concerning collateral appellate counsel's ineffectiveness arising from collateral counsel's failure to raise a claim.  The United States Supreme Court, however, has declined to extend *Martinez's* procedural default exception to claims of ineffective assistance of appellate collateral counsel for failing to assign as error that collateral counsel in the Rule 3.850 proceeding was ineffective.  *See Davila v. Davis,* 137 S. Ct. 2058, 2065–66 (2017) (finding post-conviction counsel's ineffective assistance does not excuse procedural default of a claim of ineffective assistance of appellate counsel).  Moreover, it is well-settled that Florida state courts have no obligation to provide collateral counsel "[b]ecause a prisoner does not have a

constitutional right to counsel in state postconviction proceedings." *Davila,* 137 S.Ct. at 2062. Thus, Petitioner cannot overcome the procedural default on this claim.[6]  Finally, the miscarriage-of-justice exception did not apply because Petitioner has not provided any new evidence suggesting that he was actually innocent.  *See Kuenzel v. Comm'r, Ala. Dep't of Corn,* 690 F.3d 1311, 1314–15 (11th Cir. 2012) (per curiam) (noting that, to show a miscarriage of justice, a movant must present new, reliable evidence that he is factually innocent of the crime of conviction).

> **d.      Claim 8: Counsel Was Not Ineffective With Respect To The Advice Regarding Petitioner's Right To Testify On His Own Behalf.**

In Claim 8, Petitioner asserts counsel was ineffective for misadvising and then depriving Petitioner of his right to testify on his own behalf at trial.  ECF No. [11] at 18.  Petitioner claims that since no defense witnesses were called to testify on his behalf, his testimony was the only evidence that could prove his defense.  *Id.*  Petitioner admits the claim was raised in the Rule 3.850

---

[6] After instructing the jury as to the charged offenses and the defense to criminal solicitation, the trial court gave a principal instruction, advising the jury that "[i]f the defendant helped another person or persons to commit, or attempt to commit . . . a crime, the defendant is a principal and must be treated as if he had done all the things that the other person or persons did if the defendant had a conscious intent that the criminal act be done and that the defendant did some act or said some word which was intended to, and which did incite, cause, encourage, assist or advise the other person or persons to actually commit or attempt to commit the crime.  To be a principal the defendant does not have to be present when the crime is committed or attempted."  ECF No. [18-12] at T. 1454–55.  The foregoing instruction was in accordance with the Florida Supreme Court's decision in *State v. Roby,* 246 So.2d 566, 571 (Fla.1971), which made clear that "a person is a principal in the first degree whether he actually commits the crime or merely aids, abets or procures its commission, and it is immaterial whether the indictment or information alleges that the defendant committed the crime or was merely aiding or abetting in its commission, so long as the proof establishes that he was guilty of one of the acts denounced by the statute."  *Id.*  Given the foregoing, collateral counsel had no duty to raise non-meritorious issue regarding the principal instruction in the Rule 3.850 proceeding or on appeal of its denial.  Accordingly, on this alternative basis, the claim warrants no habeas corpus relief because collateral counsel was not ineffective for failing to raise a non-preserved and non-meritorious issue during the Rule 3.850 Motion and then on appeal therefrom.

proceeding, but argues that collateral counsel was ineffective for failing to pursue the rejection of the claim on appeal following its denial. *Id.* at 18–19. Respondent argues the claim is unexhausted because its rejection was not raised on direct appeal. ECF No. [17] at 23–24. Respondent also argues that the claim fails on the merits. *Id.* As discussed below, Petitioner is not entitled to relief on this claim.

It is well settled that a criminal defendant has a fundamental constitutional right to testify on his or her own behalf at trial. *Rock v. Arkansas,* 483 U.S. 44, 49 (1987); *United States v. Teague,* 953 F.2d 1525, 1532 (11th Cir. 1992) (en banc). This right is personal to Petitioner and cannot be waived by the trial court or defense counsel. *Teague,* 953 F.2d at 1532. An argument that a defendant's right to testify was violated by his trial counsel requires analysis under *Strickland. See Teague,* 953 F.2d at 1534. Under *Strickland's* first prong, an attorney is deficient if counsel refused to accept a defendant's decision to testify and refused to call him to the stand to testify or, alternatively, where counsel never informed the defendant of his right to testify, and that the ultimate decision belonged to the defendant alone. *Id.* The second prong under *Strickland* requires a showing that, but for counsel's deficiency, the outcome of Petitioner's trial would have been different. *Id.*

Review of the trial transcripts confirms that after the State rested and the judgment of acquittal was denied, the court conducted a colloquy on the record regarding Petitioner's right to testify on his own behalf. ECF No. [18-11] at T. 1359–60. The court advised Petitioner he had a right to testify and be a witness, and also had the right not to testify on his own behalf at trial. *Id.* Although the Court reminded Petitioner it was always a good idea to discuss this right with defense counsel, the court reminded Petitioner that it was solely his decision whether he chose to testify or not. *Id.* at T. 1359. In response to the court's question of whether Petitioner was going to testify,

Petitioner responded he was not.  *Id.* at T. 1360.  Petitioner does not dispute that he acknowledged under oath that it was solely his decision not to testify, and that he chose not to testify.

A Rule 3.850 evidentiary hearing was held by the state court on this claim, where testimony was taken from Petitioner's defense counsel, Defense Counsel Vrod, the Petitioner, and Rutledge. ECF No. [18-13].  Defense Counsel Vrod testified she had a "spotty recollection" of having spoken with Petitioner regarding whether he wanted to testify on his own behalf at trial.  *Id.* at T. 43–44. At that time, she would have advised him to hold off on discussing this right until they saw the State's evidence so that they could then make a "reason[able] judgment" about the issue.  *Id.* at T. 43–44.  But for the documents in front of her from "Defender Data,"[7] defense counsel had no independent recollection going to the jail on two evenings and speaking with Petitioner about his case, whether or not to testify, and whether there were any plea offers.  *Id.* at T. 45–46.  Defense Counsel Vrod testified it was not imperative to have Petitioner testify to rebut Feliciano's testimony especially since Rutledge was also not called as a witness.  *Id.* T. 46–47.

Defense Counsel Vrod testified that she could not recall if Petitioner advised her that he had sold the rifle prior to the Mannarino murder.  *Id.* at T. 162.  Had he told her this fact, however, she would have discussed the issue further with him in relation to his testifying because this information could "cut both ways," putting Petitioner in possession of the murder weapon before the homicide.  *Id.* at T. 163.  When asked if her client had wanted to testify, Petitioner testified that she would "ha[ve] no way of blocking a client from testifying, … and it's just contrary to my whole work persona."  *Id.* at T. 164.  Defense Counsel Vrod further confirmed the decision to testify was Petitioner's to make.  *Id*.  Although she had no independent recollection, based on her

---

[7] Defense Counsel Vrod confirmed that that the case summary document from the Defender Data was maintained during her employment with the Office of Regional Conflict Counsel.  *Id.* T. 57–59.

Defender Data notes, she believed that she visited with Petitioner the evening before the Court questioned him about testifying.  *Id.* at T. 165–66.

Petitioner testified at the Rule 3.850 hearing that sometime  "mid-trial," during the testimony of a security guard, Defense Counsel Vrod leaned over and advised Petitioner not to testify because he could "hurt the case."  *Id.* at T. 134.  Petitioner denied having any discussions with defense counsel prior to that time about the pros and cons or the strategic implications of testifying on his own behalf.  *Id.* at T. 135.  Petitioner confirmed, however, that the court conducted a colloquy on the record during which Petitioner affirmed that he would not be testifying on his own behalf.  *Id.* at T. 136, 147–48.  Although he stated he would not be testifying, Petitioner stated he "really wished to testify."  *Id.* at T. 136.  Petitioner admitted at the evidentiary hearing that he "acquiesced to the orders" of his defense counsel, believing she was in his "corner."  *Id*.  He insisted, however, that he had told counsel he was "adamant on testifying."  *Id.* at T. 145.

Petitioner acknowledged that he knew Tyre and that Tyre was photographed inside Petitioner's apartment holding a rifle.  *Id*. at T. 137–38.  Petitioner also testified that, at the time the photograph was taken, he was in possession of the rifle.  *Id.* at T. 138.  However, Petitioner testified that he eventually sold the gun to Rutledge.  *Id.* Although he could not recall an exact date when he sold the rifle to Rutledge, Petitioner testified that after September 2006, when he was charged with a burglary offense, he needed money to hire an attorney, so he sold the rifle to Rutledge.  *Id.* at T. at 139–41.  Petitioner testified during cross-examination that he sold the gun for about $100 or $125.  *Id.* at T. 148.  Petitioner acknowledged that the rifle was not in his residence in December 2006 when Lt. Kapper responded to a burglary call.  *Id.* at T. at 140.  In fact, Petitioner testified that it was sold almost a year prior to Mannarino's murder.  *Id.* at T. 142.

Regarding the search history concerning Mannarino recovered from his computer, Petitioner testified he knew Mannarino was a witness against Petitioner in a criminal case. *Id.* at T. 142–43. When his lawyers indicated that Mannarino had a prior criminal history, Petitioner did a computer search to see if he could find out any more information about Mannarino's criminal past. *Id.* at T. 143. Petitioner was trying to determine from his search where Mannarino's residence was located in relation to the residence Petitioner was alleged to have burglarized. *Id*. The police report indicated that Mannarino was a "neighbor," so Petitioner wanted to see his "vantage point." *Id.*. Petitioner also denied ever discussing or conspiring with Rutledge to murder Mannarino. *Id*. at 145. Petitioner again insisted during the evidentiary hearing that he had nothing to do with Mannarino's murder. *Id.* at T. at 147. He denied asking anyone to murder Mannarino for him. *Id*. He again denied participating in the murder of Mannarino. *Id*. During cross-examination, Petitioner acknowledged he was colloquied by the court regarding his right to testify, but claims he waived the right based on advice of counsel. *Id.* at T. at 148.

The trial court denied relief, finding in pertinent part as follows:

> First, the Court finds that the defendant made the voluntary decision not to testify at his trial. . . . The defendant admitted during his testimony he knew he had the right to testify at his trial, and although he wanted to testify, he acquiesced to his attorney's advice. . . Because Ms. Vrod's testimony shows that the defendant agreed with her advice not to testify and the defendant's colloquy with the trial Court during trial confirmed as much, the Court finds that the defendant voluntarily agreed with his attorney's recommendation not to take the stand. *Lott v. State*, 931 So.2d 807, 818-19 (Fla. 2006), *distinguished on other grounds*, *Cardona v. State*, 109 So.3d 241 (Fla. 4th DCA 2013). Simply because the decision "in hindsight, did not work to the defendant's advantage," does not render the attorney ineffective. *Reynolds v. State*, 99 So.3d 459, 483 (Fla. 2012).

> Second, the Court rejects the defendant's bare assertion that [t]he attorney failed to advise him of the "pros and cons" of testifying. In *Revnolds v. State,* 99 So.3d 459 (Fla. 2012), the Supreme Court of Florida affirmed a trial court's summary denial of a defendant's post-conviction claims that counsel never prepared him to testify, and that by misadvising him of the advisability of not testifying, counsel coerced him into silence. *Id.* at 482-485.4 The Court determined

the motion was legally insufficient and thus required no further testimony. Reynolds had failed to address the specific manner in which counsel failed to prepare him, and "did not set forth the manner in which this failure ultimately prejudiced his case which would undermine judicial confidence in the outcome of his trial." *Id.* at 482. . . .

Here, as in *Revnolds,* the evidence shows indisputably the defendant chose not to testify [o]n his own behalf. The defendant's allegations that counsel advised him not to testify and did not discuss with him the strategic implications of his decision, without much more, are legally and factually insufficient. He makes no attempt to provide any specific omissions in counsel's representation which misled him into his decision not to testify. The defendant claims he had told Ms. Vrod before trial he had sold the murder weapon to Rutledge after the burglary but no later than December 2006--at least nine months before Mannarino's murder--and wanted to testify to such. Ms. Vrod, however, testified on rebuttal she had never heard this fact, which she would have remembered for its potential significance. Furthermore, the defendant's stated intention of testifying he did not know state's witness Mr. Feliciano and had nothing to do with Mr. Mannarino's murder cannot satisfy the prejudice prong of Strickland. *Id.* at 482. The Fourth District Court of Appeal finds allegations of ineffective assistance insufficient to show prejudice where the defendant merely alleges he would have testified to his innocence, rebutting the testimony of state witnesses. *Jackson v. State,* 711 So. 2d 1371, n. 1 (Fla. 4th DCA 1998), *approved, Ford v. State,* 825 So. 2d 358 (Fla. 2002). *See also Oisorio v. State,* 676 So. 2d 1363 (Fla. 1996) (there is no *per se* rule of ineffectiveness when a defendant claims a right to post-conviction relief based on counsel's interference with the right to testify; a defendant must show both counsel's deficiency and that the deficient performance prejudiced the defendant). Consistent with this principle, Ms. Vrod explained in her experience, it was dangerous to call to the witness stand and subject to cross examination a defendant who did not have a story to tell, but only a general denial of guilt. Notwithstanding the risk, she would have deferred to the defendant's wishes to testify if such was his decision. Here, however, the defendant chose to accept her recommendation not to testify. The Court finds Ms. Vrod's testimony credible. Ground Three is denied.

ECF No. [17–2], Ex. 10 at 215–18. The appellate court *per curiam* affirmed the denial of the claim

in a decision without written opinion. *Gibson v. State,* 264 So. 3d 157 (Fla. 4th DCA 2019)

(unpublished disposition); ECF No. [17-3], Ex.17 at 66.

The record clearly demonstrates that the Petitioner knowingly and voluntarily chose not to

testify on his own behalf at trial. Petitioner has not pointed to any specific way in which counsel's

failure to more thoroughly prepare him to testify would have affected the outcome of the trial. The

record confirms the ultimate decision to testify rested with the Petitioner, not counsel.  The record is also bereft of any evidence that Petitioner was subjected to coercion or undue influence, and that Petitioner's decision not to testify was anything other than knowing and voluntary.  *See Lambrix v. Singletary,* 72 F.3d 1500, 1508 (11th Cir. 1996) (Without evidence of continued coercion, the court cannot assume petitioner's "apparent acquiescence to a trial strategy in which he did not testify was anything but voluntary").  The findings by the state trial court, rejecting the claim on the basis no deficiency or prejudice under *Strickland* had been demonstrated, which denial was affirmed on appeal, was not contrary to controlling federal constitutional principles.  The court's findings are entitled to deference, and should not be disturbed here.

## IV.    EVIDENTIARY HEARING

In a habeas corpus proceeding, the burden is on Petitioner to establish the need for a federal evidentiary hearing.  *See Chavez v. Sec'y, Fla. Dep't of Corr.,* 647 F.3d 1057, 1060 (11th Cir. 2011).  To determine whether an evidentiary hearing is needed, the question is whether the alleged facts, when taken as true, are not refuted by the record and may entitle a petitioner to relief.  *See Schriro v. Landrigan,* 550 U.S. 465, 474 (2007); *see also Jones v. Sec'y, Fla. Dep't of Corr.,* 834 F.3d 1299, 1319 (11th Cir. 2016).  However, "[w]hen the state-court record 'precludes habeas relief' under the limitations of § 2254(d), a district court is 'not required to hold an evidentiary hearing.'"  *Cullen,* 563 U.S. at 183 (quoting *Shriro,* 550 U.S. at 474).  The pertinent facts are fully developed in the record before this Court.  Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," an evidentiary hearing is not warranted.  *Turner v. Crosby,* 339 F.3d 1247, 1275 (11th Cir. 2003).

## V.      CERTIFICATE OF APPEALABILITY

After careful consideration of the record in this case, it is recommended that no Certificate of Appealability issue.  A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell,* 556 U.S. 180, 183 (2009) (citing *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000) and *Wilkinson v. Dotson,* 544 U.S. 74, 78-83 (2005)). This Court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Where a district court has rejected a petitioner's constitutional claims on the merits, a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  *See Slack,* 529 U.S. at 484.  However, when the district court has rejected a claim on procedural grounds, a petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id.*  Upon consideration of the record, this Court should deny a certificate of appealability. Notwithstanding, if Petitioner does not agree, he may bring this argument to the attention of the District Judge pursuant to the Objections section below.

## VI.      RECOMMENDATIONS

Based upon the foregoing, it is **RECOMMENDED** that:

1.      the Petition ECF No. [11] be **DENIED**;

2.      final judgment be entered in favor of Respondent;

3.      a certificate of appealability be **DENIED**; and,

4.      the case be **CLOSED**.

## VII.    OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the United States District Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation.  Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Report and Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  *See* 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *Harrigan v. Metro-Dade Police Dep't Station #4,* 977 F.3d 1185, 1191-92 (11th Cir. 2020).[8]

**DONE and ORDERED** this 13th day of November, 2021.

_____
**JACQUELINE BECERRA**
**UNITED STATES MAGISTRATE JUDGE**

---

[8] The Court is mindful that *Clisby v. Jones*, 960 F.2d 925, 936 (11th Cir. 1992) requires district courts to address and resolve all claims raised in habeas corpus proceedings, regardless of whether relief is granted or denied.  *Clisby,* 960 F.2d at 936.  However, nothing in *Clisby* requires, much less suggests, consideration of claims or arguments raised for the first time in objections.  If Petitioner attempts to raise arguments or further factual support for his claim in objections, the Court should exercise its broad discretion and refuse to consider the arguments not raised before the Magistrate Judge in the first instance.  *See Williams v. McNeil,* 557 F.3d 1287, 1292 (11th Cir. 2009) (finding no abuse of discretion by the district court in declining to consider timeliness argument that was not presented to the magistrate judge)).

Finally, the undersigned notes that she has considered all of Petitioner's arguments in support of his claims for relief.  *See Dupree v. Warden,* 715 F.3d 1295, 1299 (11th Cir. 2013) (finding that courts shall review petitioner's claims so long as the claims are presented in a clear and simple language so that the court may not misunderstand it).  Petitioner has failed to demonstrate how the state courts' denial of the claims, to the extent they were considered on the merits in the state forum, were contrary to, or the product of an unreasonable application of, clearly established federal law.

cc:

Reginald Bertram Johnson, *Pro Se*
DC#280395
Hardee Correctional Institutions
Inmate Mail/Parcels
6901 State Road 62
Bowling Green, FL 33834

Sandra Lipman, Assistant Attorney General
Office of the Attorney General
444 Brickell Avenue, Suite 650
Miami, FL 33131
Email: sandra.lipman@myfloridalegal.com